## Wright *vs.* Saunders.

Although four witnesses, against one, is a very great preponderance, yet it is the right of a referee to believe the one, and disbelieve the four. Having seen and heard the witnesses, he is much better able to determine the amount of credit to which they are respectively entitled, than the court can be.

Although *towns* are not obliged to keep the whole of a highway, from one boundary to the other, free from obstructions and fit for the use of travellers, the principle cannot apply to the streets of a *village.*

The great number of persons and teams passing and repassing along the streets of a village, the danger of collisions, of horses running away, from fright or the carelessness of drivers, and the consequent danger to human life, render it absolutely necessary that such streets be kept free from obstructions throughout the whole extent of them; and if an injury occurs from a neglect of this duty, on the part of those charged with the care of the streets, they are liable for the damages resulting therefrom.

Where one does not own the land on which a street is laid—his lot being bounded by the line of the street—he has no greater right to the land within the boundaries of the street than any other citizen.

No person, whether he be owner or not, has the right to obstruct a highway, either by placing obstructions, or making excavations, therein. Such obstructions are public nuisances, and may be abated by any person injured thereby. And the person making such obstruction is liable to the injured party for such damages as may be sustained by reason thereof.

It being the duty of the public officers charged with the care of highways, to keep the streets of a village free from obstructions which can interfere with the safe passage of persons, thereon, and teams, over the same, an individual has the right to rely on the performance of this duty, and to pass along any part of the street, in the day or night time, in the faith that he will find no obstructions therein.

By attempting to travel the streets in the night, a person is bound to exercise care and caution commensurate with the danger incurred; but he is not

Wright *v.* Saunders.

bound to anticipate that he will encounter excavations or embankments without having some notice thereof, by lights or other precautions taken for his protection.

Digging post-holes in a street is a public nuisance, although it be done in a part of the street not used, nor susceptible of use, by the public by reason of natural obstructions therein.

When the act done is a nuisance, the liability of the party causing it, for the consequences, follows as a matter of course, provided the person injured by such act is himself free from negligence.

While, in the country, travellers may be bound to keep the travelled part of the road, in cities and towns they are entitled to the uninterrupted use of the streets, at all times, (subject to the right of use by individuals, temporarily, for the purposes of business, and to make excavations therein,) against danger from which all reasonable precautions must be taken, by the use of guards or lights, as the nature of the case may require.

APPEAL, by the defendant, from a judgment entered upon the report of a referee.

The action was brought to recover damages for an injury sustained by the plaintiff, by reason of his stepping into a fence post-hole, digged by the defendant upon his own lot, adjacent to a public street in St. Johnsville, N. Y. The action was referred to a referee, who reported in favor of the plaintiff for $200 damages.

*J. Genter,* for the appellant.

*Hardin & Burrows,* for the respondent.

*By the Court,* MULLIN, P. J. It is not claimed by the defendant but that the plaintiff broke his leg by falling into a post-hole, dug on or near the defendant's land, in the village of St. Johnsville. The plaintiff's witness, Herdman, testifies that he (the plaintiff) fell into the post-hole at the intersection of the line between the Shaver and Saunders' lots with the street. Four witnesses on the part of the defence testify that the corner post-hole was not dug until the Monday after the injury to the defendant. The witnesses, on the part of the plaintiff, describe the hole, into which the plaintiff fell,

as being about two and a half feet deep, and about two feet square at the top ; and but one hole is described by them, and this was the corner hole. Four witnesses against one is a very great preponderance. Yet it was the right of the referee to believe the one and disbelieve the four. He saw and heard them, and he is much better able to determine the amount of credit to which they were respectively entitled than we can be. It was not important into which hole the plaintiff fell, unless there is some question as to whether any hole, except the corner one, was in the highway. There is evidence that the corner post-hole was within the bounds of the street, but none that any other was in the street. The number of witnesses on this question is with the defence. There is evidence, however, to support the finding, and we must hold the findings of the referee sustained by the evidence.

The next question of fact found by the referee is, that the defendant did not take any precautions to prevent persons, travelling in the street, from falling into the hole thus dug by him within it. On this point there is no conflict of evidence, nor is it claimed that any precaution was taken by the defendant. It was also found, that the plaintiff was not guilty of negligence, and hence negligence on his part did not contribute to the injury. This finding presents the only important question in the case ; and I am not aware that the precise question has ever been passed upon by any court in this country or in England ; at least I have not been able to find any decision on the point, in the books.

It appears by the evidence, that the street in question was laid out by the commissioners of highways three rods wide. It had been fenced on both sides, in front of the defendant's premises, but the fence on the defendant's side had been removed, or destroyed, some time before the injury.. On the west side of the street a side-walk had been constructed, which those living on both

sides of the street, above and below the defendant's lot, were accustomed to use. In front of the defendant's lot, and on the same side of the street, there was a path used by persons going to and returning from a penstock or water-trough. The side of the road along which this path ran was rough and uneven, covered with stone taken from the road and adjoining lots, and not a convenient way for either foot passengers or teams. The plaintiff was a stranger in the place. He knew nothing of the post-holes, and was accompanied by his nephew, a resident of St. Johnsville, with a lantern, who knew the condition of the street throughout its whole extent. The negligence imputed to the plaintiff is that he, being a stranger, was, in the night, on the west side of the street where it was unfit for travel, when he might and should have been either upon the sidewalk or in the travelled part of the street; in either of which cases the accident would not have occurred. Had the action been against the commissioners of highways, for injuries sustained by means of the stones and other obstructions in the street in front of the defendant's land, it then might be some ground for saying it could not be sustained. It was held in *Howard* v. *The Inh. of North Bridgewater*, (16 *Pick.* 189,) that towns are not obliged to keep the whole of a highway, from one boundary to the other, free from obstructions and fit for the use of travellers. The cause of the injury in that case was large stones left on the side of the road, some eight feet from the travelled track, against which the plaintiff's horse ran, being frightened, and broke his leg. This principle cannot apply to the streets of a village. The great number of persons and teams passing and repassing along the streets, the danger of collisions of horses running away from fright or the carelessness of drivers, and the consequent danger to human life, render it absolutely necessary that such streets be kept free from obstructions throughout the whole extent of them; and

if an injury occurs from a neglect of this duty on the part of those charged with the care of the streets, they are liable for the damages resulting therefrom.

In this case the defendant did not own the land on which the street was laid. His lot is bounded by the easterly line of the street, and hence he had no greater right to the land within the boundaries of the street than any other citizen. No person, whether he be owner or not, has the right to obstruct a highway, either by placing obstructions, or making excavations, therein. Such obstructions are public nuisances, and may be abated by any person injured thereby. And the person making such obstruction is liable to the injured party for such damages as may be sustained by reason thereof. (*Ang. on Highways*, §§ 285, 298, 300.) It being the duty of the public officers charged with the care of the highways, to keep the streets of the village of St. Johnsville free from obstructions which could interfere with the safe passage of persons thereon, and teams over the same, the plaintiff had the right to rely on the performance of this duty, and to pass along any part of the street in the day or night time, in the faith that he would find no obstructions therein. By attempting to travel the streets in the night, he was bound to use care and caution commensurate with the danger incurred; but he was not bound to anticipate that he would encounter excavations or embankments without having some notice thereof by lights or other precautions taken for his protection. The defendant had no right to dig post-holes in the highway. But if he did, it was his duty to place lights, so as to warn travellers of the danger, or to so cover them as to prevent injury by falling into them. There was a sidewalk on the west side of the street, over which the plaintiff might have passed to Herdman's house. But it does not appear that he knew of such walk, or knew that he incurred any risk in travelling on the east side; so that I am unable to discover any

Wright v. Saunders.

negligence on the part of the plaintiff. It is quite obvious that, although the path which the plaintiff travelled was a rough and unpleasant one, it was by no means impassable or dangerous if the defendant had left the surface unexcavated. And it is equally clear that the accident could not have occurred if the defendant had covered or otherwise guarded the excavation.

It is time that persons living on streets and highways were taught that they have not the right to dig trenches and place obstructions therein, and that they are liable for all damages resulting therefrom. While, in the country, travellers may be bound to keep the travelled part of the road, in cities and towns they are entitled to the uninterrupted use of the streets at all times, subject to the right of use by individuals, temporarily, for the purposes of business, and to make excavations therein, against danger from which all reasonable precautions must be taken, by the use of guards or lights, as the nature of the case may require. Digging post-holes in a street is a public nuisance, although in a part of it not used, nor susceptible of use, by the public by reason of natural obstructions therein. (*Commonwealth* v. *King*, 13 *Metc.* 115.)

Where the act done is a nuisance, the defendant's liability follows, as a matter of course, if the plaintiff is free from negligence. That none is proved, I am well persuaded.

I am therefore of the opinion that the judgment should be affirmed.

[ONONDAGA GENERAL TERM, January 2, 1866. *Mullin, Morgan* and *Bacon,* Justices. Decision affirmed by Court of Appeals. Case very meagerly reported, however, in 36 *How.* 136, and 3 *Keyes*, 323.]