Coös,        }
June 29, 1922. }

## Florence M. Eley v. Twin State Gas & Electric Company.

In the construction of a deed, a word will not ordinarily be given a different meaning where it is not meaningless as it stands.

A right of flowage may be described as the right to flow to a certain point or to certain other lands; and "the right of flowage to other land of said grantees" is not an apt expression to confer the right to flow the land so mentioned.

If on a party's request evidence be excluded and the jury are instructed to disregard it, he thereby waives his exception thereto.

Case, for flooding the plaintiff's cellar. Trial by jury and verdict for the plaintiff. The facts and exceptions are stated in the opinion. Transferred from the December term, 1920, of the superior court by *Allen*, J.

*Ovide J. Coulombe* (by brief and orally), for the plaintiff.

*George F. Rich* and *Jesse F. Libby* (*Mr. Rich* orally), for the defendant.

Peaslee, J. The plaintiff owns land and buildings in Gorham, some distance from the Androscoggin river, and sues to recover for damage caused by the percolation of water incident to an increase in the height of the river, caused by a dam maintained by the defendant. The defendant claims the right to flow the plaintiff's land under certain conveyances. It was assumed at the trial that the deeds conveyed such right, and the issues tried were whether the right had been lost by abandonment or adverse user; and if it had, whether the defendant's acts were unreasonable. The plaintiff had a verdict and the case is here upon the defendant's exception to the submission of the issues of abandonment and adverse use.

By the deed of Flanders and Adams to Hutchinson, given in 1856, the grantors conveyed a part of a tract of land adjoining the river. The description concludes with the following language: "including all the interest said grantors have in said river with the right of flowage to other land of said grantees adjoining, reserving the right to claim to nominal damages." The water power was then undeveloped and remained so for more than a generation thereafter. There was no practical construction of the grant of water rights by the parties. The defendant now claims the right to flow

the lands owned by the original grantors in 1856 to any extent it chooses. One question presented is whether this is the true construction of the deed.

It was assumed at the trial and at the argument here that the word "grantees" was intended to be "grantors," and that the deed is to be so read. The language used does not require such alteration of the text. It is not meaningless as it stands. A right to flow to a certain point is often conveyed, and "lands of said grantees adjoining" might well be used as a boundary of such right. Reading the deed as it is written, the defendant took nothing under it which would be a defence upon the evidence now in the case. The defendant's claim that grantees should be read grantors having apparently been adopted without question at the trial, evidence applicable to the deed as it is written was not called for and was not introduced. Whether it exists does not appear.

If, however, the defendant's contention be adopted and "grantees" is read "grantors," even against subsequent purchasers from the grantors, the question is, what was intended by the expression "with the right of flowage to other land of said grantors adjoining." It is at least doubtful whether this, if it stood alone, could be construed to convey any right to flow the land which appears to be designated as the boundary to which flowage may extend. "The right of flowage to other land of said grantors" is not an apt expression to convey the idea of a grant of a right to flow the land mentioned. The insufficiency of the language for such purpose is illustrated in a practical way by the transferred case, where it is quoted as being "the right of flowage to flow lands," etc.

But the clause does not stand alone. The whole contract is to be read together; and the succeeding clause, reserving to the grantors a claim for damages, shows an intent to convey some right in the grantors' other land. If no such right were granted, there would be no occasion to reserve a claim for damages. The reservation interprets or amplifies the preceding clause in two ways. It indicates an intent to convey something, as stated above, and it also supplies the only evidence in the case showing the extent of that which was granted. While there is a grant of some right as to flowage, that grant is coupled with a reservation of "the right to claim to nominal damages." What the grantor "reserved he did not convey, and what he did not convey remained his in continuation of his former title." *Smith* v. *Furbish*, 68 N. H. 123, 145. The reservation is not to be presumed to be without substantial mean-

ing. It clearly indicates that the parties understood that the exercise of the granted right would cause only the nominal damages stipulated for. The deed gave the grantee the right to maintain a dam without molestation, but reserved to the grantors their alternative right to recover the damages for flowage. Another object may have been to make the grantee and his successors secure in the right to a future development of the power to the exclusion of a conflicting development upon the grantors' property. The added grant of "all the interest said grantors have in said river," gives color to this view.

It is not reasonable to conclude that the parties understood that the deed conveyed extensive rights of future flowage, as to which no provision was made for compensation to the owner of the servient estate when the right should be exercised, while at the same time a right to recover the "nominal damages" was stipulated for.

Upon the whole, it appears that what the parties had in mind was a grant of the right to the water power as appurtenant to the granted lands rather than to the lands not conveyed. With this went a right to raise the water opposite the grantors' land to an extent which would cause only nominal damages, which were to be paid.

The case having been tried upon a different theory of the meaning of the deed, the construction herein suggested may be shown to be incorrect upon a future investigation of the surrounding facts, conducted in view of the present decision. Material and important evidence bearing upon the question may have been left out of the case by the defendant, because it was immaterial, in view of the construction placed upon the deed by the presiding justice. Whether there is or is not occasion for such further proceedings is a matter to be determined in the superior court, if application is made therefor.

In any permissible view of the meaning of the deed as the evidence stands, all the defendant owns, as against the plaintiff's estate, is a right to raise the water and manage its dam in a reasonable way. *Moore* v. *Company*, 74 N. H. 305. For any acts in excess of the right it must respond in damages. *Chapman* v. *Company*, 74 N. H. 424, 425.

The issue of reasonable use has been tried, with a verdict in favor of the plaintiff. The other issues tried — whether the defendant had lost an easement of general flowage by abandonment, or by the adverse possession of the plaintiff and her ancestors in title —

were immaterial. Such right as the defendant was shown to have ever had was only to a reasonable use of the stream, and affords no answer to a complaint for unreasonable use.

In this situation it appears that the plaintiff is entitled to judgment. "In no way were the defendants deprived of their right to a fair trial; but, on the other hand, they had the full benefit of every defence open to them upon the proper issues in the case, and the additional benefit of a defence which was not properly open to them, and one, too, which strongly tended to defeat any recovery by the plaintiff." *Felch* v. *Railroad*, 66 N. H. 318, 323. If, however, there are other facts which ought to be considered upon the construction of the deed, in view of the conclusions here reached, the defendant should seek relief in the superior court.

The claimed exception to evidence of attempts to compromise with the plaintiff is not before the court. At the defendant's request that evidence was all finally excluded and the jury were instructed to disregard it. This course of conduct leaves the defendant without any exception to the subsequently revoked reception of the evidence. "Asking for and obtaining that instruction amounted to a waiver of his exception to the evidence." *Manchester* v. *Duggan*, 75 N. H. 33, 35.

*Exceptions overruled.*

All concurred.